IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RAYMOND ROY, | : | |
|    Plaintiff | : | No. 1:21-cv-00946 |
| | : | |
| v. | : | (Judge Kane) |
| | : | |
| COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF LABOR & INDUSTRY, | : : : | |
|    Defendant | : | |

## MEMORANDUM

This case arises out of Plaintiff Raymond Roy ("Plaintiff")'s allegations that Defendant Commonwealth of Pennsylvania, Department of Labor and Industry ("Defendant"), his employer, acted with discriminatory racial animus when it failed to promote him in November of 2019, violating Title VII of the Civil Rights Act of 1964 ("CRA") and the Pennsylvania Human Relations Act ("PHRA"). Before the Court is Defendant's Motion for Summary Judgment. (Doc. No. 26.) For the reasons that follow, the Court will grant the motion in its entirety.

I.   **BACKGROUND**[1]

Plaintiff is an African American man who works for the Commonwealth of Pennsylvania in the Department of Labor and Industry ("Department"). (Doc. No. 31 ¶¶ 1–2.) Plaintiff is classified as an "Administrator 3," and has been employed by the Commonwealth for thirty-five (35) years, specifically by the Department for twelve (12) years. (Id. ¶¶ 3–4.) In 2019, Terry Peck ("Mr. Peck"), another employee of the Department, supervised Plaintiff. (Id. ¶ 5.) During

---

[1] The following relevant facts of record are taken from Defendant's Statement of Undisputed Material Facts ("SUMF") (Doc. No. 31) and Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("PRUM") (Doc. No. 36). Both the SUMF and PRUM contain specific citations to the record at each numbered paragraph. The facts are undisputed unless otherwise noted.

that year, Plaintiff applied for a promotion inside the Department. (Id. ¶ 6.) While submitting his application, Plaintiff listed the wrong email address to contact him. (Id. ¶ 7.) Upon receiving the application, the Department initiated an interview between Plaintiff, his supervisor Mr. Peck, Mr. Randy Stambaugh ("Mr. Stambaugh"), and Ms. Amanda Piro ("Ms. Piro"). (Id. ¶ 8.) Defendant maintains that Plaintiff did not show up for the interview until an administrative staffer informed him that he had an interview that day. (Id. ¶ 9.) Plaintiff asserts that he never received notice of the interview and once informed, "he immediately participated and performed well." (Doc. No. 36 ¶ 9.)

Later, a second interview took place between Plaintiff, Mr. Peck, Mr. Stambaugh, and Ms. Piro. (Doc. No. 31 ¶ 10.)[2] Following this second interview, the panel unanimously decided to hire another candidate. (Id. ¶ 11.)[3] Because the decision of the panel was unanimous, insofar as all three members agreed on whom to hire, no panel member took a determinative vote. (Id. ¶ 12.) Defendant asserts that Plaintiff did not prepare for either of the two interviews. (Id. ¶ 13.) In response, Plaintiff maintains that his relevant and lengthy work experience served as adequate interview preparation. (Doc. No. 36 ¶ 13.) Defendant asserts that Plaintiff cannot point to anything in the record revealing discriminatory animus on the part of Mr. Stambaugh or Ms. Piro. (Doc. No. 31 ¶ 14.) In response, Plaintiff maintains that both Mr. Stambaugh and Ms. Piro evinced an "unconscious bias," through the utilization of a mannerism test to evaluate interviewees that was biased in practice because it favored "white people mannerisms over black

---

[2] Plaintiff does not dispute that a second interview occurred, but takes issue with the necessity of the second interview. (Doc. No. 36 ¶ 10.)

[3] Plaintiff disputes Defendant's assertion that the decision to hire another candidate was unanimous, stating that "there is a genuine issue of material fact as to the level of Mr. Peck's influence on the panel's decision." (Doc. No. 36 ¶ 11.)

2

people mannerisms." (Doc. No. 36 ¶ 14.) The notes from the interviews with each of the candidates have been preserved. (Doc. No. 31 ¶ 15.)[4]

Following Defendant's decision not to promote him, Plaintiff filed complaints with the United States Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Relations Commission ("PHRC"). (Doc. No. 1 ¶¶ 13–14.) The EEOC issued Plaintiff a Right to Sue letter on February 24, 2021. (Id. ¶ 15.) On May 25, 2021, Plaintiff filed the above-captioned action in this Court. (Doc. No. 1.) Upon the conclusion of discovery, on May 5, 2023, Defendant filed a Motion for Summary Judgment. (Doc. No. 26.) That same day, Defendant moved for an extension of time to file a Statement of Material Facts (Doc. No. 27) and the Court granted that motion (Doc. No. 28). On June 20, 2023, Defendant filed its Statement of Undisputed Material Facts and its Brief in Support of its Motion for Summary Judgment. (Doc. Nos. 31, 32.) After requesting and receiving an extension of time (Doc. Nos. 33, 34), Plaintiff filed his Brief in Opposition to Summary Judgment (Doc. No. 35), along with his Answer to Defendant's Statement of Facts (Doc. No. 36). On August 23, 2023, Defendant filed a Reply Brief in Support of its Motion for Summary Judgment. (Doc. No. 37.) Accordingly, Defendant's Motion for Summary Judgment has been fully briefed and is ripe for disposition.

---

[4] Plaintiff does not dispute that the notes are available as an exhibit. (Doc. No. 36 ¶ 15.) However, Plaintiff takes issue with the criteria cited therein. (Id.) Plaintiff cites Griggs v. Duke Power Company, and claims that here, as in Griggs, the criteria used to score interviewees was facially neutral but discriminatory in practice. (Id.); see also Griggs v. Duke Power Co., 401 U.S. 424, 429–30 (1971) (explaining that "[t]he objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees. Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to 'freeze' the status quo of prior discriminatory employment practices").

## II.     LEGAL STANDARD

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  See Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable factfinder to return a verdict for the non-moving party.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.  See id. at 251–52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  See A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  See Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145–46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  See Berckeley Inv. Grp. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.  See Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant a motion for summary judgment when the

non-movant's evidence is merely colorable, conclusory, or speculative.  See Anderson, 477 U.S. at 249–50.  There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts.  See id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Further, a party may not defeat a motion for summary judgment with evidence that would not be admissible at trial.  See Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 (3d Cir. 1999).

## III. DISCUSSION

### A. Legal Standard Applicable to Plaintiff's Discrimination Claim Under Title VII of the CRA and the PHRA[5]

Plaintiff asserts claims of race discrimination pursuant to Title VII of the CRA, 42 U.S.C. § 2000e et seq., and the PHRA, 43 P.S. § 951 et seq.  To survive a motion for summary judgment, the plaintiff "must carry the initial burden under the statute of establishing a prima facie case of racial discrimination."  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). A plaintiff can meet their burden to demonstrate a prima facie case by providing sufficient evidence for a reasonable factfinder to conclude that plaintiff:

> (1) is a member of a protected class; (2) is qualified for the position; (3) suffered some form of adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination.

See Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (cleaned up); see also Jones, 198 F.3d at 410–12 (explaining that an "adverse employment action" can include something less drastic

---

[5]  The two claims will be analyzed together under the Title VII framework, because Title VII discrimination claims and PHRA discrimination claims are viewed as analogous causes of action.  See Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 410 (3d Cir. 1999) (discussing how Title VII and PHRA discrimination claims are similarly reviewed under the McDonnell-Douglas framework); see also Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996) (calling Title VII the federal counterpart of the PHRA).

than removal or suspension).  Next,

> [i]f the plaintiff succeeds in establishing a prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the [adverse employment action].  Finally, should the defendant carry this burden, the plaintiff then must have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.

See id. at 410.  With regard to the pretext inquiry:

> to avoid summary judgment, the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons[] was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext).  To discredit the employer's proffered reason, however, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Rather, the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons.

See Fuentes v. Perskie, 32 F.3d 759, 764–65 (3d Cir. 1994) (cleaned up).

### B. Arguments of the Parties

Defendant effectively concedes the first three elements of Plaintiff's prima facie discrimination claim, but maintains that Plaintiff cannot establish that "the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination." (Doc. No. 32 at 6, 11.)  Defendant argues that: (1) Plaintiff's only evidence of discrimination is premised on the fact that he is a member of a protected class; and (2) Plaintiff's case rests on his belief that he was qualified for the promotion and the person who was ultimately promoted is white.  (Doc. No. 32 at 6.)

Defendant maintains that this case, where a hiring panel ultimately decided against promoting Plaintiff, is analogous to cases where a majority of a board or commission must agree

in order to take an official action. (Id. at 6–7.) Defendant argues that multimember entities can only be liable for discriminatory acts if a majority of members are found to have acted with animus. (Id.) Defendant posits that LaVerdure v. County of Montgomery, wherein the court reviewed the hiring decision of a board where only one member had an improper motive, is analogous to this case. See (id.); see also LaVerdure v. County of Montgomery, 324 F.3d 123, 125 (3d Cir. 2003) (highlighting that, when "only a majority of the three-member Board is authorized to establish policy on behalf of the County," one member's discriminatory statements cannot impute liability to the entire board). Defendant maintains that, even if Plaintiff could prove that Mr. Peck had a discriminatory motive, Plaintiff has not pointed to any evidence showing that Ms. Piro or Mr. Stambaugh exhibited discriminatory racial animus towards him. (Doc. No. 32 at 8.) Defendant states that "even if a finder of fact were to find some discriminatory intent on [Mr. Peck]'s part, that would be insufficient to override the other two members of the interview panel." (Id. at 9.)

Defendant further argues that Plaintiff fails to show discriminatory animus on the part of Mr. Robert O'Brien ("Mr. O'Brien"), the Executive Deputy Secretary of the Pennsylvania Department of Labor and Industry. (Id. at 10.) Defendant maintains that the only evidence Plaintiff can offer is his own deposition testimony, wherein he describes the lack of African American managers at the Department, while pointing to no record evidence supporting his insinuation that Mr. O'Brien exhibited discriminatory animus towards him. (Id.) Defendant further maintains that Plaintiff "has presented no admissible evidence that he was treated differently than any other similarly situated individuals." (Id. at 11.) Defendant argues that the only evidence even hinting at disparate treatment is inadmissible hearsay, which this Court

7

cannot consider in resolving its motion for summary judgment. (Id. at 11–12.)[6]

Finally, Defendant maintains that, even if a reasonable factfinder could conclude from the evidence in the record that Plaintiff met his burden of establishing a prima facie case, Plaintiff's claim must still fail because Defendant has offered legitimate, non-discriminatory reasons for its decision not to promote Plaintiff. (Id. at 12–13.) In other words, Defendant argues that Plaintiff cannot point to record evidence to establish that Defendant's stated, non-discriminatory reason for promoting Mr. Anthony Mirarchi ("Mr. Mirarchi") over Plaintiff was a pretext for unlawful discrimination. (Id. at 13.) Defendant posits that Plaintiff "essentially missed his first interview," then "admitted that he did no preparation for either that interview or the second one he was graciously given," and these facts support Defendant's position that Mr. Mirarchi was promoted because he performed at a higher level during the interview process relative to Plaintiff. (Id.)

In response, Plaintiff argues that he can establish a prima facie case of discrimination under Title VII. Plaintiff maintains that the all-white hiring panel, coupled with Mr. Peck's credibility issues, preclude this Court from granting summary judgment. (Doc. No. 35 at 8.) Plaintiff argues that his qualifications are sufficiently impressive to make him the best candidate for the promotion he was denied. (Id. at 9.) Plaintiff further posits that those qualifications also prepared him to adequately answer interview questions without further preparation by him. (Id.)

Plaintiff argues that Mr. Peck, a member of the hiring panel that did not promote him, wielded significant power over the hiring process and used that power to deny Plaintiff a promotion he deserved solely because he was an African American. (Id. at 10–11.) Plaintiff

---

[6] Defendant refers to alleged "hearsay. . . claiming that other employees on his level told him in 'private conservations'" that Mr. Peck treated similarly situated employees differently. (Doc. No. 32 at 1.)

supports his argument by citing an earlier written reprimand from Mr. O'Brien to Mr. Peck, wherein Mr. O'Brien informs Mr. Peck that he behaved inappropriately towards a subordinate and was evasive to investigators trying to review the incident.  (Id. at 10; Doc. No. 35-1 at 2.)  Plaintiff also maintains that Mr. Peck disliked him, and in his supervisory role, constantly went around Plaintiff and communicated instead with Plaintiff's subordinates, in clear defiance of the Department's chain of command.  (Doc. Nos. 35 at 11; 35-1 at 13.)  Plaintiff alleges that, when he interviewed for the role of Admin Four (4) Officer, Mr. Peck had already decided he wanted Mr. Mirarchi, his friend and a white man, to have the job.  (Doc. No. 35 at 12.)  Plaintiff maintains that Mr. Mirarchi was a "less qualified candidate" with little to no experience in procurement, a major component of the job for which he was interviewing.  (Id.)  Plaintiff maintains that the hiring of an individual "outside of Plaintiff's protected class" gives rise to the inference of discriminatory animus.  (Id. at 13.)

Plaintiff also maintains that he can demonstrate pretext to discredit Defendant's posited interview performance based, non-discriminatory reason for failing to promote him.  (Id. at 15.)  Plaintiff argues that Mr. Peck, a member of the hiring panel, is not a credible witness and intentionally asked Plaintiff interview questions "which completely avoided substance."  (Id.)  Plaintiff asserts that Mr. Peck failed to provide any written or oral record explaining or justifying his poor evaluation of Plaintiff.  (Id.)  Plaintiff further maintains that the fact that he was the only minority candidate interviewed for the Admin Four (4) Officer position gives rise to an inference of discriminatory animus casting doubt on Defendant's stated non-discriminatory reason for failing to promote him.  (Id. at 16.)

Plaintiff additionally argues that the scoring criteria used by the interviewers was "neutral on its face but discriminatory" against minority applicants in practice.  (Id.) (cleaned up).  In

support of this contention, Plaintiff maintains that the scoring criteria considers mannerisms and tone, not criteria indicative of the traits and qualifications necessary to succeed in the job itself. (Id. at 17.)  Plaintiff posits that "the scoring favored white people mannerisms over black people mannerisms." (Id. at 19.)  Plaintiff argues that: (1) it is unclear why this mannerism-based scoring criteria was utilized during the second interview but not the first interview; (2) it is unclear why the second interview was necessary; and (3) it is unclear why the second interview panel was made up of the same three individuals as the first interview panel.  (Id. at 13–21.)  Plaintiff distinguishes the cases cited by Defendant, which support the premise that liability cannot be imputed to a hiring entity unless a majority of board or panel members acted with improper motive, claiming that those cases are inapposite because the entire interview panel in this case utilized a discriminatory mannerisms test which should make Defendant liable for the panel's decision not to promote Plaintiff.  (Id. at 22.)  Finally, Plaintiff maintains that Defendant "has failed to show that Plaintiff still would have been rejected, irrelevant to his protected class" and that "Defendant's systematically bias[ed] interview system discriminated against [Plaintiff] and all black people as a whole."  (Id. at 23.)

In its reply brief, Defendant maintains that Plaintiff: (1) adds several pieces of commentary in his response to Defendant's Statement of Undisputed Material Facts which are inadequate to serve as proper denials (Doc. No. 37 at 2–7); (2) argues through "factual overstatements and misrepresentations" unsupported by any record evidence (id. at 9); (3) relies on Griggs and the argument that the interview process was designed to discriminate against African Americans while failing to provide any record citations to support this assertion (id. at 11); and (4) ignores precedent which supports Defendant's argument that the Court should look at the motives of the entire hiring panel and not simply the alleged motives of one member (id. at

10

13–14 (arguing that Plaintiff ignores Edwards v. Pennsylvania Humans Relations Commission, No. 18-cv-02398, 2023 WL 1929998 (M.D. Pa. Feb. 10, 2023), and uses the "systemic bias" argument as a "Hail Mary")).[7]

### C.  Whether Defendant is Entitled to Summary Judgment on Plaintiff's Discrimination Claim

As an initial matter, the Court need not resolve the parties' dispute regarding whether Plaintiff has adequately demonstrated the fourth element of a prima facie case of racial discrimination under Title VII of the CRA and the PHRA, because even assuming that he has, and upon review of the briefs of the parties and the evidence of record, and construing all facts in the light most favorable to Plaintiff, the non-moving party, the Court concludes that Plaintiff has failed to produce sufficient evidence demonstrating that Defendant's legitimate, non-discriminatory reason for failing to promote him—namely, Plaintiff's lower interview scores relative to his fellow interviewees and his overall lack of preparation for said interview—was a pretext for discrimination.  As noted above, for Plaintiff's discrimination claim to survive summary judgment when his former employer articulates a legitimate, nondiscriminatory reason for its action, the burden shifts to Plaintiff to demonstrate pretext by either "(i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."  See Fuentes, 32 F.3d at 764.  In attempting to demonstrate that Defendant's proffered reason for hiring Mr. Mirarchi for the

---

[7] For reference, in Edwards v. PHRC, the Honorable Christopher C. Conner found that a plaintiff's prima facie race and gender discrimination claim failed because she had not "demonstrated [that] improper motives drove a majority of votes, provided the decisive margin, or tainted a significant bloc of commissioners."  See Edwards, 2023 WL 1929998, at *8.

Admin Four (4) Officer position instead of Plaintiff was pretextual, Plaintiff points to several pieces of evidence. The Court addresses each in turn.

First, Plaintiff attempts to demonstrate pretext by claiming that Defendant's decision not to promote him was "based on flimsy logic," and that Mr. Peck himself is not credible. (Doc. No. 35 at 13.) Plaintiff cites Mr. Peck's deposition testimony, wherein he "testified that he felt that Plaintiff's interview after the first round was poor" but provided no oral or written evidence that substantiated the alleged poor interview. (Id. at 15.) The Court finds that the lack of oral or written evidence justifying Mr. Peck's poor evaluation of Plaintiff's interview does not give rise to the inference that Defendant's rationale for failing to promote Plaintiff was pretextual. The Court also finds unavailing Plaintiff's reference to a prior written reprimand of Mr. Peck in an effort to undermine his credibility. See (id.). Mr. Peck was not accused of racism in the reprimand. Rather, the reprimand chastises Mr. Peck for inappropriately approaching a subordinate employee and alluding to removing her from her position. (Doc. No. 35-1.) It also accuses Mr. Peck of "exasperat[ing] the situation" by providing false information in a conversation with said subordinate while trying to resolve the conflict between them, as well as misleading investigators looking into the incident. (Id.) The reprimand calls his behavior "unbecoming" and informs him that such conduct has "the potential to bring the department into disrepute." (Id.) In considering the foregoing reprimand, and drawing all factual inferences in favor of the non-movant Plaintiff, the Court finds that Plaintiff fails to point to record evidence which permits the Court to make the inferential leap that, because Mr. Peck misled investigators years ago in an unrelated matter, he would do the same again here in a sworn deposition in the instant case. See (Doc. No. 31-3 at 5). In reviewing a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his

12

favor." See Anderson, 477 U.S. at 255.  Plaintiff presents only his own conjecture as to Mr. Peck's credibility, in addition to evidence of a reprimand unrelated in substance and temporal proximity to the present action.  Because Plaintiff has not presented the Court with "evidence . . . to be believed," see id., the Court finds that Mr. Peck's credibility affords no factual basis for Plaintiff's desired inference that Defendant's rationale for failing to promote Plaintiff was pretextual.

Next, Plaintiff attempts to demonstrate pretext by asserting that Defendant uses scoring criteria to evaluate candidates that discriminates against African American interviewees.  (Doc. No. 35 at 16.)  Plaintiff maintains that Defendant uses a scoring system focused on "mannerisms and tone" over content, which is a subtle form of discrimination serving as a barrier to African American advancement in the workplace.  (Id. at 17.)  Plaintiff cites Griggs and claims that this case similarly features facially neutral policies designed to perpetuate racist hiring practices. (Id.)  In Griggs, the United States Supreme Court found that an employer violated the CRA when it required a high school diploma or the passing of general intelligence tests when:

> neither standard is shown to be significantly related to successful job performance, both requirements operate to disqualify [Black workers] at a substantially higher rate than white applicants, and the jobs in question formerly had been filled only by white employees as part of a longstanding practice of giving preference to whites.

See Griggs, 401 U.S. at 426.  In that case, the employer designed the job requirements to disallow black workers from advancing to higher paying positions.  See id.  However, the Court finds Plaintiff's reliance on Griggs inapposite.  In the instant case, Defendant did not design a test for applicants to complete, but simply formulated an internal system for evaluating interviewees.  Further, Plaintiff cites to no record evidence reflecting: (1) a history of racism in the hiring practices of the Pennsylvania Department of Labor and Industry; (2) any record of

13

black interviewees systematically scoring lower on evaluation metrics than white interviewees; or (3) data showing that this position and similar positions in the Department had "been filled only by white employees" see id., in the past. Plaintiff argues that the Court should find that the Pennsylvania Department of Labor and Industry maintains hiring practices analogous to the employer's hiring practices in Griggs. However, Plaintiff provides no citations to record evidence that permits the Court to make this inference. The Court also finds that Plaintiff's assertion that "[t]he scoring favored white people mannerisms over black people mannerisms" (Doc. No. 35 at 19) is merely conjectural, lacks evidentiary support in the record, and does not give rise to the inference that Defendant's stated rationale for failing to promote Plaintiff was pretextual. See Colkitt, 455 F.3d at 201 (explaining that "summary judgment is essentially 'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot ret solely on assertions made in the pleadings, legal memoranda, or oral argument"). Even viewing the record in the light most favorable to the non-moving Plaintiff, the Court finds that no reasonable finder of fact could conclude that the interview evaluation metrics were designed to perpetuate racist hiring practices. Accordingly, Plaintiff's argument fails to cast sufficient doubt on Defendant's stated non-discriminatory rationale for failing to promote Plaintiff.

In his next attempt to demonstrate pretext, Plaintiff points to the Department's requirement of a second-round interview and maintains that this gives rise to the inference of discriminatory animus. (Doc. No. 35 at 18.) More specifically, Plaintiff argues that: (1) the second interview was unnecessary; (2) the second interview was conducted by the same panel that conducted the first interview; (3) the second interview used different evaluation criteria, which was facially neutral but racist in practice; and (4) the second round of interviews was

purely a sham. See (id. at 17–19). The Court finds Plaintiff's argument unavailing, because Plaintiff does not cite to anything besides his own preferred evaluation criteria,[8] or the interview scores themselves, in asking this Court to make the inference that the second round interview was merely the perpetuation of a sham process designed to discriminate against Plaintiff. The Court is similarly unpersuaded by Plaintiff's argument that, because the second interview featured evaluation criteria for each question asked and not just one evaluation score for interviewers to rate the entire interview, Defendant's stated reason for hiring Mr. Mirarchi instead of promoting Plaintiff must be pretextual. To the contrary, the Court finds that Plaintiff fails to cite to any record evidence to support his desired inference that requiring a second interview with each candidate renders Defendant's stated rationale for choosing not to promote Plaintiff pretextual. See Blunt v. Lower Merion Sch. Dist., 767 F.3d 247, 265 (3d Cir. 2014) (finding that "mere allegations are insufficient" to defeat summary judgment).

Additionally, Plaintiff cites his own deposition and claims that "Mr. Peck did not want to be there," because "[h]e did not believe a second round of interviews necessary because he had already affirmed his blatant or unconscious bias against Plaintiff in the interview." (Doc. No. 35 at 21.) However, Plaintiff's deposition testimony cannot support an assertion regarding what Mr. Peck believes. Because "a party resisting the motion cannot expect to rely merely upon bare assertions, conclusory allegations, or suspicions" see Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981), the Court finds that Plaintiff fails to present evidence that would allow a reasonable factfinder to infer discriminatory animus from Mr. Peck so as to cast doubt on Defendant's

---

[8] In his brief, Plaintiff authors an "Illustrative Non-Discriminatory Example" of interview scoring criteria. (Doc. No. 35 at 19–20.) It appears, because there is no record citation, that Plaintiff created these criteria solely for the purposes of his brief, to support the assertion that if Defendant used Plaintiff's preferred criteria, Plaintiff would have received higher scores and thus been promoted over Mr. Mirarchi.

legitimate, nondiscriminatory reason for failing to promote Plaintiff to the Admin Four (4) position.

Plaintiff next attempts to demonstrate pretext by arguing that Defendant's "board member case law does not apply" in this case. See (Doc. No. 35 at 21). First, Plaintiff asserts that the cases cited by Defendant can be distinguished from the instant case. (Doc. No. 35 at 22–23.) Second, Plaintiff maintains that, even if the Court is persuaded that the board member cases are proper analogs for the Court's review of the record in this case, "[h]e is alleging that Defendant's systematically bias[ed] interview practice discriminated against him and black people as a whole." (Id. at 23.) The Court finds Plaintiff's arguments unavailing, for several reasons. With regard to the multi-member board or panel argument, the Court acknowledges that "[o]ur court of appeals has not had occasion to delineate the causation standard in cases against multimember decisionmaking bodies under Title VII." See Edwards, 2023 WL 1929998, at *7. However, that does not mean that Defendant's citations are wholly irrelevant to the present dispute. The authority relied on by Defendant points to a trend observable in this circuit (and other circuits); generally, district courts should look at multimember bodies and only find them liable for discriminatory actions if a plaintiff can adduce sufficient evidence showing that a majority of the relevant entity was motivated by discriminatory animus. See Watson v. Borough of Susquehanna, 532 F. App'x 233, 236 (3d Cir. 2013) (unpublished) (concluding that "Watson cannot establish the required causal link in order to hold an individual decision maker liable when less than a majority of the decision-making body acted for an impermissible retaliatory reason");[9] LaVerdure, 324 F.3d at 125–26 (holding that a municipal body could not be liable

---

[9] The United States Court of Appeals for the Third Circuit has acknowledged that its unpublished opinions may nonetheless contain persuasive reasoning. See New Jersey, Dep't of Treasury, Div. of Inv. v. Fuld, 604 F.3d 816, 823 (3d Cir. 2010) (noting that an unpublished

under § 1983 when minority of local board allegedly acted with discriminatory animus but could not make policy without a majority vote); see also Griggs v. Chickasaw Cnty., Mississippi, 930 F.3d 696, 704–05 (5th Cir. 2019) (finding that retaliation claim required a showing that a majority of the local board had retaliatory animus towards the plaintiff); Campbell v. Rainbow City, Ala., 434 F.3d 1306, 1313 (11th Cir. 2006) (utilizing the majority liability theory in evaluating when improper motives can be imputed to entire multimember entities).[10] Accordingly, the Court is not persuaded by Plaintiff's argument, which attempts to distinguish the relevant authorities on their facts and ignores the larger doctrinal point that courts generally do not impose liability for decisions by multimember entities when only one member of the entity—who cannot alone make policy or take unilateral official action—exhibits discriminatory animus. See supra at 16. That being the case, the Court finds that Plaintiff fails to point to record evidence suggesting that discriminatory animus motivated two of the three panel members in connection with their assessment of Plaintiff's application for the promotion. See Colkitt, 455

---

opinion is "as persuasive as its reasoning"); see also Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 n.12 (3d Cir. 1996) (following an unpublished opinion based on "factual similarity" and "look[ing] to the [unpublished opinion] as a paradigm of the legal analysis"). Because the Third Circuit has not ruled on the specific issue of Title VII liability for multimember entities, the Court is guided by the treatment of multimember entity liability in the analogous cases cited herein.

[10] There is a circuit split on the issue of when liability can be imputed to multimember entities. The Sixth Circuit requires claimants to show that "improperly motivated members suppl[ied] the deciding margin." See Scarbrough v. Morgan Cnty. Bd. of Educ., 470 F.3d 250, 272 (6th Cir. 2006) (discussing multimember entity liability for a § 1983 claim). In the First Circuit, courts ask if a "significant bloc" of members were motivated by improper motives. See Scott-Harris v. City of Fall River, 134 F.3d 427 (1st Cir. 1997), rev'd sub nom. Bogan v. Scott-Harris, 523 U.S. 44, 118 S. Ct. 966, 140 L. Ed. 2d 79 (1998) (discussing multimember entity liability for a § 1983 claim). Under any of these standards, Plaintiff fails to adduce evidence to allow a reasonable finder of fact to conclude that discriminatory animus motivated a significant bloc of the hiring panel or that those with discriminatory animus provided the deciding margin in the panel's decision to hire Mr. Mirarchi instead of Plaintiff to the Admin Four (4) Officer position.

F.3d at 201 (highlighting that summary judgment cannot be defeated based on bare assertions in pleadings or legal memorandum).

Accordingly, upon review of the evidence of record, and construing all facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff fails to point to objective evidence in the record from which a factfinder could reasonably either disbelieve Defendant's articulated reason for failing to promote Plaintiff or believe that some invidious discrimination was more likely than not a motivating or determinate cause of Defendant's action, instead engaging in speculation to support his argument that Defendant's stated, performance-based reason for not promoting him was pretext for racial discrimination.  Therefore, the Court will grant Defendant's motion for summary judgment.

## IV.   CONCLUSION

For all of the foregoing reasons, the Court will grant Defendant's motion in its entirety. An appropriate Order follows.

s/ Yvette Kane  
Yvette Kane, District Judge  
United States District Court  
Middle District of Pennsylvania